UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER ANN DRAKE,

    Plaintiff,

v.                                                        Case No. 1:13-cv-230
                                                        Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                          /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on January 27, 1977 (AR 182).[1] She alleged a disability onset date of October 1, 2006 (AR 182). Plaintiff completed the 10th grade, and had previous employment as a day care provider, restaurant server, and hostess/server at a country club (AR 187). Plaintiff identified her disabling conditions as: back injury (two surgeries); depression; panic attacks; and post traumatic stress (AR 186). She had filed a previous application for DIB in 2009, listing the same alleged onset date (AR 20). This claim was denied on December 16, 2009 and plaintiff did not request review (AR 20). Plaintiff commenced the present claim by filing an application on June 16, 2010 (AR 20). The Administrative Law Judge (ALJ) construed plaintiff's current application as an implied request to re-open her 2009 application, but declined to re-open it because "no new and

---

[1] Citations to the administrative record will be referenced as (AR "page #").

material evidence was furnished, nor was there any evidence of error" (AR 20).  On December 16, 2011, the ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 20-32).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 1, 2006 and met the insured status requirements of the Social Security Act through December 31, 2011 (AR 22). At step two, the ALJ found that plaintiff suffered from severe impairments of: degenerative disc disease of the lumbar spine; an affective disorder; and an anxiety disorder (AR 22). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.04 (disorders of the spine), 12.04 (affective disorders) and 12.06 (anxiety related disorders)(AR 23).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) [i.e., the ability to occasionally lift 10 pounds maximum, stand and/or walk for up to 2 hours in an 8 hour work period, and sit for up to 6 hours in an 8 hour work period] except the claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and/or crawl, but she must avoid concentrated exposure to extreme temperatures and humidity. The claimant can understand, remember, and carry out simple work instructions, but she is unable to perform more complex decisionmaking that would require coming up with creative solutions to novel situations. The claimant can tolerate occasional changes in the work setting in terms of work processes and products. The claimant can make simple workplace judgments, but she can only occasionally interact with co-workers, supervisors, and the general public. Furthermore, the work must include an option to alternate between sitting and standing once every hour for 5 minutes.

(AR 26) (footnote omitted). The ALJ also found that plaintiff was unable to perform her past relevant work (AR 30).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 31). Specifically, plaintiff could perform the following

sedentary work: circuit board assembler (2,500 regional and 50,000 national jobs); surveillance systems monitor (400 regional and 21,000 national jobs); and document preparer (700 regional and 29,000 national jobs) (AR 31). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from her alleged onset date of October 1, 2006, through December 16, 2011 (the date of the decision) (AR 32).

### III. ANALYSIS

Plaintiff presented five arguments on appeal:

**A.   The ALJ did not properly evaluate plaintiff's credibility in light of consistent medical records and medical history.**

Plaintiff contends that "[t]he ALJ gave no valid reason to doubt the veracity of claimant's symptoms." Plaintiff's Brief at p. 13. Plaintiff's contention is without merit. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence,

or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ summarized plaintiff's alleged disabling conditions disability claim as follows:

> The claimant asserts that she has been unable to perform any work since October 1,2006 primarily because of her severe impairments. The claimant testified that because of her severe impairments she is unable to cope with social situations (Hearing Testimony). The claimant also reports that her ability to sit, stand, and walk are limited by pain and functional limitations directly related to her back (Id.). In addition to that already outlined, the claimant also reported she has started to experience bilateral lower extremity numbness and tingling (Id.).

(AR 26).

Contrary to plaintiff's blanket assertion that the ALJ gave "no valid reason" to doubt her veracity, the record reflects that the ALJ made this credibility determination after performing an extensive evaluation of plaintiff's medical history since her alleged onset date. Rather than summarize the ALJ's evaluation and review of the medical record (which contains facts to support the ALJ's credibility determination), the Court will reproduce it:

> The claimant's allegations of symptoms are not accepted as alleged because those allegations are not consistent with the available objective medical evidence. First with regard to her back impairment, a thorough review of the claimant's medical record indicates that she has a severe impairment, but that her symptoms would not preclude the performance of work at the sedentary exertional level. The evidence indicates that the claimant sought medical treatment even prior to her alleged onset date for lower back, neck and arm pain and numbness (Exhibit 4F). However, imaging was initially unremarkable (Id.). By May 2006, the claimant again sought medical attention; at that time, a magnetic resonance imaging (MRI) test of the lumbar spine resulted in findings consistent with degenerative changes between the L4-S1 vertebral levels with left paracentral posterior disc herniation

with compromise of the nerve roots, and an annular tear and broad-based posterior disc protrusion at L4 (Exhibit 5F).

She subsequently underwent back surgery. A left L5-S1 vertebral level partial hemilaminectomy, medial facetectomy, foraminotomies over the L5-S1 nerve roots and excision of disc was perfonrmed; following the surgery the claimant reported that her left leg pain had resolved (Exhibits 6F and 7F). The claimant was ambulatory shortly thereafter and released with instructions for physical therapy (Id.). However, the records indicate the claimant failed to follow her primary care physician's orders; she never attended a therapy session and was discharged after failing to return the therapist's call (Id.). Nevertheless, the claimant did return in August 2006 complaining of left lumbosacral and sacral pain (Exhibit 6F). At that time, the claimant was working, her gait and posture were normal, her strength was intact, and she had a good range of movement throughout her spine with only minimal range of movement loss on flexion (Id.). The claimant did have a positive straight leg raise test (SLR) at this time; but the physician followed a conservative treatment regimen consisting of pain medication and instructions for a home exercise program (HEP) (Id.).

Following the operation, imaging from 2007 was unremarkable aside from noted postoperative changes consistent with the procedure outlined above (Exhibit 4F). In early 2008, the claimant had yet to start any physical therapy, and by April magnetic resonance imaging (MRI) testing revealed that the claimant's previous surgery was unsuccessful (Exhibits 6F and 7F). The following month, the claimant underwent a second L5-S1 discectomy and left L4-L5 foraminotomy (Id.). Initially, the claimant did well but she soon started experiencing lower back and leg pain (Id.). This resulted in a diagnosis of a recurrent disc herniation and nerve root compression between the L4-S1 vertebral levels with and stenosis, due to minimal spurring (Id.). Regardless, the claimant's strength and lower extremity sensations remained intact (Id.).

The claimant continued to report pain consistent with what she had allegedly experienced prior to her surgeries; however, electromyography studies in mid 2009 were normal; there was no evidence of either neuropathy or radiculopathy (Exhibit 6F). In January 2010, the claimant again reported lower back and extremity pain consistent with neuropathy (Exhibit 4F). A magnetic resonance imaging (MRI) test revealed showed a recurrent disc herniation that was noted to be moderately narrowing the left neural foramen with potential for radiculopathy (Id.).

Follow-up testing on the cervical spine also revealed some mild desiccation of the C3-C4 vertebral level indicative of minimal degenerative changes, but no evidence of herniation, canal or foraminal stenosis was seen (Exhibit 6F). Moreover, additional electromyography studies of the lower extremities were also unremarkable (Id.). The attending physician felt that physical therapy was likely the claimant's

best course of action because she had a normal gait and station, she was able to heel/toe and tandem walk, and she had a full range of movement of all her extremities (Id.). At this time, the claimant's straight leg raise test (SLR) remained positive, but only on the left while her deep tendon reflexes and sensations remained intact (Id.). An exam in May remained consistent with that above except some decreased sensation over the left L5 area was noted (Exhibit 8F). In addition, the claimant's straight leg raise test (SLR) was now negative bilaterally (Exhibit 8F).

The following September, the claimant again reported neck and back pain, but her primary care physician found the pain likely secondary to muscle tightness (Exhibit 8F). Subsequent records in October make no mention of lower back or extremity pain (Id.). It was not until June 2011 that the claimant was again treated for issues consistent with that above (Exhibit 10F). Nonetheless, the claimant's exam was rather benign; she had a full range of movement of all her extremities, her pulses were intact, and her straight leg raise test (SLR) remained negative bilaterally (Id.). The claimant's gait and station also remained normal, as did her coordination (ld.). The claimant was able to heel/toe and tandem walk; and additional magnetic resonance imaging (MRI) testing did not reveal any evidence of significant nerve root compression despite some minimal stenosis (Id.). The following month, another magnetic resonance imaging (MRI) test revealed that her surgical changes were stable despite a disc protrusion at the L5-S1 vertebral level (Id.). Even with the aforementioned findings, the claimant had a "good" range of movement of lumbar spine with normal curvature, strength, and symmetrical and active deep tendon reflexes, bilaterally (Id.). The record reveals no further treatment since the July 2011 exam discussed above.

Turning to the claimant's mental impairments, pre alleged onset records indicate that the claimant denied any depression or anxiety (Exhibit 8F). Nevertheless, a few months later, she reported that she was depressed but controlling it with medications (Id.). The foregoing was confirmed by records for an unrelated medical issue dated June 2008, which found the claimant pleasant and in no acute distress (Exhibit 3F).

Despite the claimant's alleged depression and anxiety, the records document an increase in the claimant's extracurricular activities, specifically that she was going to church more often, without any noted anxiety problems (Id.). The claimant experienced a decidedly traumatic event when her sister was murdered in 2007. She had an extended grief reaction to that event and no doubt has ongoing limitations secondary to her mental impairments. But her activities suggest she is able to work with appropriate limitations, as outlined above. A social worker assessed the claimant with a Global Assessment of Functioning (GAF) score of 36 in May 2010 (Exhibit 13F), indicating significant mental health limitations. But this represents only a snapshot of the claimant's functioning and is afforded only limited weight. There is no evidence the social worker had more than fleeting contact with the

8

> claimant; accordingly, this one-time assessment is afforded little weight. A treatment note from May 2009 indicated that the claimant's conditions were "well controlled" with the medication Effexor (Exhibit 8F). Furthermore, records from January 2010 found that the claimant reported she was "feeling pretty well" (Id.). Regardless, while the claimant's primary care physician continued to treat her mental issues with medications throughout 2010, and she saw a social worker in May 2010, she did not actively seek formal psychiatric care during this time period (Id.).
>
> Additional evidence from 2010 supports the contention that the claimant's conditions were reasonably well controlled; on a number of occasions, she was noted to [sic] alert and oriented to persons, places, and time, and her memory was intact (Exhibit 7F). Also, the claimant's physician found her speech normal, she was knowledgeable, and her attention span, mood, and affect were all normal (Exhibit 7F). The claimant did not require formal therapy until February 2011, went [sic] she sought the care of Dr. Hare on a referral by her attorney (Exhibit 11 F). At that time, the claimant reported feeling depressed and anxious (Id.). The claimant started a medication and therapy regimen and by March, the notes indicated that she was making some progress (Id.). However, later notes did indicate she continued to be isolative, only feeling comfortable at home (Id.). Regardless of the alleged limitations, the claimant continued to be able to carry out all her duties as a mother (Id.). More recent treatment notes found the claimant comfortable in the social office setting of her therapist; there were also no appreciable hygienic deficits (Id.). The claimant even reported going to the Kalamazoo Air Zoo and beach (Id.).

(AR 27-29).

After performing this rather extensive review of plaintiff's medical history since her alleged onset date, the ALJ determined that plaintiff's complaints were not entirely credible:

> Regarding the claimant's severe impairments, through testimony at the hearing and the forms submitted through the hearing level, the credibility of the claimant's allegations is compromised by the inconsistencies that exist between the evidentiary records and her actual abilities. For example, as previously discussed, the claimant alleges that she is unable to function socially because of her anxiety and depression; however, she has required/sought little formal therapeutic treatment, and she has reportedly gone into highly social environments without any documented issues. There are significant gaps in the claimant's treatment history, with the most recent medical records failing to support the severity of her allegations. Although the inconsistent information provided by the claimant may not have been the result of a conscious intention to mislead, the inconsistencies do suggest that the information provided by the claimant generally may not be entirely reliable. Therefore, based upon the foregoing evidence, the undersigned is unable to conclude that the claimant, as a result of her back disorder and anxiety/depression, is limited

9

> beyond the capacity to perform sedentary work as outlined above. To the extent that the claimant's allegations are inconsistent with that assessment, those allegations are not accepted as alleged.

(AR 29).

The ALJ's summary of plaintiff's medical history, when combined with his credibility determination, identified contradictions between the medical records, plaintiff's testimony and other evidence. *See Walters*, 127 F.3d at 531. There is no compelling reason to disturb the ALJ's credibility determination, which was reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249; *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error should be denied.

> **B. Opinions of the treating physicians must be given controlling weight in the absence of reasons to question foundation for the opinions.**

Plaintiff contends that, contrary to the regulations, the ALJ gave little or no weight to the opinions of her treaters, Mark Meyer, M.D. (a board-certified neurosurgeon) and Gordon Hare, Ph.D. (a licensed clinical psychologist). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to

opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, while plaintiff contends that the ALJ improperly weighed the opinions of Dr. Meyer and Dr. Hare, she does not address any particular opinion that was improperly weighed. *See* Plaintiff's Brief at pp. 13-14. Rather, plaintiff speculates that "the Judge had a serious question about the credentials of these physicians" and that the ALJ erred because "he had a duty to fully develop the record through several means, including ordering claimant's attorney to produce proof of credentials." Plaintiff's Brief at p. 14. This claim is without merit. The ALJ's decision did not

11

question the credentials of either Dr. Meyer or Dr. Hare (AR 20-32). Accordingly, plaintiff's claim of error should be denied.[2]

>    **C.    The ALJ erred in failing to find that plaintiff met the listing for 11.08, describing spinal cord or nerve root lesions, and/or 1.04, disorders of the spine.**

Plaintiff contends that the ALJ failed to find her disabled under Listings 11.08 or 1.04. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

---

[2] The Court notes that the plaintiff raised a separate issue with respect to the ALJ's evaluation of Dr. Hare's RFC assessment. *See* discussion in § III.E., *infra*.

Plaintiff has failed to meet her burden demonstrating that her condition met or equaled a listed impairment. While plaintiff's brief included a summary of her medical record, she did not address the requirements of either Listing 11.08 (spinal cord and nerve root lesions due to any cause) or 1.04 (disorders of the spine), nor did she demonstrate which specific medical findings satisfied any particular listing. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the Court deems this claim waived.

> **D.   Even if the spinal listing is not met, the combined effect of the spinal disorder symptoms and the post-traumatic stress disorder make plaintiff unemployable.**

Plaintiff contends that the combined effect of her spinal disorder and post-traumatic stress disorder maker her unemployable. Plaintiff provides little argument in support of this position, relying on the ALJ's determination that she has a severe spinal disorder that prevents performance of her past relevant work as a day care provider, restaurant server, and hostess/server at a country club (AR 187). Plaintiff's Brief at p. 15. From this finding, plaintiff jumps to the conclusion that she "could not work consistently and productively according to a schedule, nor could she likely make production considering her post traumatic stress disorder, making the circuit board assembler, surveillance system monitor, or document preparer jobs identified by the vocational expert, inappropriate and impossible to perform." *Id.* at pp. 15-16.

13

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a vocational expert (VE) in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the record reflects that the ALJ developed a very restrictive RFC after performing an extensive review of plaintiff's physical and mental condition (AR 26-30). The ALJ's hypothetical question posed to the VE included the restrictions set forth in the RFC determination (AR 26, 96-98). While plaintiff disagrees with VE's testimony that she retains to ability to perform 3,600 jobs in the regional economy, plaintiff provides no basis to contest this testimony. Plaintiff does not present any substantive discussion of the ALJ's RFC determination, the hypothetical question posed to the VE, or the VE's findings. Plaintiff's Brief at pp. 15-16. While plaintiff cited a district court case which performed an extensive analysis of whether a particular hypothetical question adequately addressed a particular claimant's limitations[3], plaintiff did not present a similar

---

[3] *Cheeks v. Commissioner of Social Security*, 690 F. Supp. 2d 592, 600-603 (E.D. Mich. 2009).

factual or legal analysis to support her claim that she cannot perform any of the jobs identified by the VE. Accordingly, plaintiff's claim of error should be denied.

> **E.** **The ALJ improperly concluded that Dr. Hare's report was the result of undue influence by plaintiff's attorney, and failed to accept the opinions of a treating source contrary to law.**

Finally, plaintiff contends that the ALJ did not accept Dr. Hare's RFC assessment (AR 577-78) because it was generated due to the "undue influence" of plaintiff's counsel. Plaintiff's Brief at p. 16.[4] The ALJ evaluated Dr. Hare's opinion as that of a treating psychologist:

> The claimant's treating psychologist also submitted an opinion into the record (Exhibit 12F). Dr. Gordon Hare opined on November 16, 2011, that the claimant was markedly limited in the following abilities: social interaction, responding appropriately to changes, traveling to unfamiliar places, with understanding / remembering / carrying out detailed instructions, in concentration, persistence or pace, and with work around others (Id.). The undersigned finds that the foregoing is only entitled to limited weight. First, there is the issue of the claimant's treatment history with Dr. Hare; the record indicates that historically, the claimant's treatment with him has been quite brief (Exhibit 11F). In fact, the claimant has only been treated by Dr. Hare since February 2011, a date that is almost five years after the alleged onset. There is also the issue that the claimant underwent the initial examination, which formed the foundation for the opinion in question, on a referral from her attorney (Exhibit 11F). It is unclear if the claimant's original intent was to actually seek treatment for her symptoms, or if it was merely an effort to generate evidence for the current appeal. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was originally produced cannot be entirely ignored. More importantly, the longitudinal record in this case does not support the degree of limitation outlined in Dr. Hare's report and I discount his opinion accordingly.

(AR 30).

The ALJ gave good reasons for giving limited weight to Dr. Hare's opinion. *See Wilson*, 378 F.3d at 545. The ALJ considered plaintiff's longitudinal treatment record, reviewing

---

[4] The Court notes that Dr. Hare prepared the RFC assessment eight days after plaintiff's administrative hearing held on November 8, 2011 (AR 37, 577-78).

plaintiff's mental impairments since she experienced the traumatic event of her sister's murder in 2007 (AR 28-29). The ALJ observed that while plaintiff "had an extended grief reaction to that event and no doubt has ongoing limitations secondary to her mental impairments," her condition was "well controlled" with medication in 2009 and 2010 (AR 24, 28-29). In addition, other evidence indicated that plaintiff performed a number activities (e.g., cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for her grooming and hygiene, caring for her children, using telephones and directories, using a post office, working word problems, playing computer games and managing her finances) (AR 24, 28-29).

Contrary to plaintiff's characterization, the ALJ did not give Dr. Hare's opinion limited weight simply because it was the result of "undue influence" by plaintiff's attorney. The record reflects that plaintiff's attorney referred her to Child & Family Psychological Services, P.C. on February 24, 2011 (AR 556), and that plaintiff was seen 13 times between February 24, 2011 and June 7, 2011, and once on October 5, 2011 (AR 556-76). Even if the original intent of referring plaintiff to Dr. Hare was to generate evidence for the administrative hearing, the medical record establishes that Dr. Hare treated plaintiff over the course of four to eight months, and the ALJ conceded that the treatment was legitimate and deserved due consideration. Finally, the Court notes that the actual "Functional Capacity Assessment" in § III of the form signed by Dr. Hare neither addressed plaintiff's ability to perform work-related activities nor stated any employment preclusive conditions. Rather, the doctor's Functional Capacity Assessment of plaintiff stated the rather benign conclusion that: "She is very anxious, self-critical and depressed. She lacks self confidence." (AR 578). Accordingly, plaintiff's claim of error should be denied.

**IV.     Recommendation**

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated:  September 3, 2014                         /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).